Norman v. Rullman.

No. 19,163.

CHARLES V. NORMAN, as Administrator, etc., *Appellee*,
v. NELLIE RULLMAN, *Appellee*, and MARGARET E.
MALLOWS, *Appellant*.

SYLLABUS BY THE COURT.

1. ADMINISTRATION OF ESTATE—*Promissory Note Was the Absolute Property of the Widow of Deceased.* In making a loan of money, a promissory note was taken, payable to the order of the lender at a certain date if living, or in case of his death, to his wife. The lender having died before the note was paid, the administrator of his estate sued the maker and joined the widow as a defendant, who answered, claiming the amount due upon the note. In the issue joined between the administrator and the widow, it is held that the widow should recover.

2. SAME—*Unpaid Debts of Estate Immaterial.* The circumstance that the deceased left insufficient personal property to pay all his debts is immaterial to the issue tried.

Appeal from Doniphan district court; WILLIAM I. STUART, judge. Opinion filed January 9, 1915. Reversed.

*Christian Dubach,* and *Perry A. Brubaker,* both of St. Joseph, Mo., for the appellant.

*F. W. Paschal,* and *J. J. Baker,* both of Troy, for the appellees.

The opinion of the court was delivered by

BENSON, J.: This action was brought by the administrator against the defendants, Nellie Rullman and Margaret E. Mallows, upon a promissory note as follows:

"$300.00.                              TROY, July 15, 1912.
"One year after date I promise to pay to the order of French J. Mallows, or in case of his death to his wife, Margaret Mallows, Three Hundred, $^{no}/_{100}$ Dollars, for value received, payable, without defalcation or discount, with interest from date at the rate of 8

per cent per annum until due, and 10 per cent after due until paid. The drawers hereof and the endorsers hereon severally waive notice, protest and appraisement.

"Payable at the First National Bank of Troy, Troy, Kansas. Due July 15, 1913.    NELLIE RULLMAN."

Mrs. Rullman answered admitting the execution of the note and her liability thereon, alleging that the proceeds were claimed by the estate of French J. Mallows and also by Margaret E. Mallows, and offering to confess judgment in favor of the person entitled to receive the amount.

The defendant, Margaret E. Mallows, alleged that the note was due to her and that she furnished the consideration. In a reply it was alleged that the note was never delivered to Margaret E. Mallows and that the estate of French J. Mallows is indebted to numerous parties and is insolvent.

Mr. Mallows died a little over a month after the note was given. It still remained in the bank.

The testimony of Mrs. Rullman, in substance, was that just before the date of the note she asked Mr. Mallows, who was then ill, for a loan. He referred to certificates of deposit in the First National Bank of Troy which drew only 3 per cent and said that he might as well make 5 per cent as the bank; that he had given the certificates as a wedding present to his wife but had reserved a lifetime interest. He prepared a note which Mrs. Rullman signed, payable to French J. Mallows or in case of his death to Margaret E. Mallows. He gave her a check for the amount, which, however, the bank declined to pay because he had no money on general deposit, only the certificates. In a short time Mrs. Rullman returned to the bank accompanied by Mrs. Mallows who then had the two certificates of deposit for $150 each, payable to the order of French J. Mallows, which then bore his indorsement. The president of the bank objected to the note that Mr. Mallows had prepared because of in-

definiteness in time of payment and wrote out the note now sued upon, following the form of the first note as to payees. Mrs. Mallows surrendered the certificates, and the money was paid over to Mrs. Rullman upon her signing the note, which was left at the bank as Mr. Mallows had requested.

The testimony of the banker relating to the transactions at the bank does not materially differ from that of Mrs. Rullman, only his recollection was that both ladies came the first time instead of Mrs. Rullman alone. Mrs. Mallows then produced the certificates but they did not then bear Mr. Mallows' indorsement. The note was then written by him, made payable the way in which it now appears, at the direction of Mrs. Mallows, who said her husband requested it to be so drawn. The note was then signed and left at the bank. In a short time both women returned, Mrs. Mallows having the certificates indorsed by Mr. Mallows, which the bank cashed, paying the money to Mrs. Rullman.

There was some other evidence tending to prove that at or before his wedding Mr. Mallows said he would give the certificates to his wife and handed them to her.

Over the objection of Mrs. Mallows evidence was admitted tending to prove that the personal property left by Mr. Mallows had been exhausted and that a claim of about $50 for funeral expenses remained unpaid.

The court instructed the jury that the burden was upon the defendant, Mrs. Mallows, to prove that she was the owner of the note in question, and that she furnished the money for which it was given. An instruction was also given to the effect that if Mr. Mallows gave the certificates to his wife, but reserved an interest or a life estate in them, then there was no valid gift, and she could not recover. Other instructions were given, but the foregoing sufficiently show the theory adopted by the court.

In our view of the case it is not material whether there had been a valid gift of the certificates or not. Mr. Mallows had an undoubted right to appropriate them to the loan in the way the undisputed evidence shows was done. He could take a note for the proceeds, payable absolutely to his wife, or to her in case she outlived him, and the transaction can not be lawfully challenged by the administrator. *Prima facie* the note is payable to the party named in it just as written, that is, to Mrs. Mallows, Mr. Mallows having died. Nothing is found in the evidence to overthrow this *prima facie* effect of the instrument, and the burden to do so was upon the administrator. The contract evidenced by the note was made with Mallows for the benefit of his wife upon condition that it remained unpaid at his death. Even if not privy to the consideration, Mrs. Mallows could enforce it as it was made for her benefit. (*Anthony v. Herman,* 14 Kan. 494; *Life Assurance Society v. Welch, as Sup't, &c.,* 26 Kan. 632, 641.) If the certificates were not hers already, he applied them for her benefit to the extent stipulated in the note, when he endorsed them and diverted them to the loan, payable as he directed it should be. The deposit of the note in the bank where it was payable was as effectual a delivery for one payee as the other, both having an interest in it and both consenting to the deposit. Indeed, it has been held that it is not necessary that a contract made for the benefit of another shall be delivered to the beneficiary if delivered to the one who made the contract. (9 Cyc. 302.)

This subject is discussed at length in *Copeland, Executor, et al. v. Summers et al.,* 138 Ind. 219, 35 N. E. 514. A father conveyed land to a son upon a contract that the son should pay a sum annually to the father during his life, and afterwards make certain payments to persons named. The contract was never delivered to the persons who were to receive these payments, but was retained by the father. The executor was im-

pleaded and an issue was framed and tried to determine whether the payments the son had agreed to make should be paid to the persons named in the contract, or to the executor, it being conceded by the son that he owed the amount. Referring to the rule that one for whose benefit a promise has been made to a third party may maintain an action upon it as too familiar to require the citation of authorities, it was held that the beneficiaries named in the contract were entitled to the payments as against the executor. Concerning the contention of the executor that the transaction was a testamentary disposition, and that the title and control had not passed from the father during his life and therefore the payments due belonged to his estate, the court said:

"By the conveyance to Milton L. Copeland, jr., and taking back from him an obligation to pay the appellees the sums therein named, he made him a trustee for the appellees. In contemplation of law, he left in the hands of Milton L. Copeland, jr., the amount of money to be paid to them, and thereafter he held such funds as their trustee, to be paid according to the terms of the contract." (p. 224.)

So here Mr. Mallows, by paying over the money to Mrs. Rullman upon her promise to pay it over to his wife after his death, appropriated it to that use.

In *Prindle v. Caruthers,* 15 N. Y. 425, the action was upon an instrument in the following form:

"For value received, I promise to pay to Henry Caruthers, or his wife Elizabeth, annually, on the first day of April, during the life of the longest liver of them, the sum of two hundred dollars, if called for or needed." (p. 425.)

The suit was by an assignee of the wife, the husband having died. In opinions obscured somewhat by discussions of pleadings not pertinent here, it seems to have been held that upon the death of the husband the right of action survived to the wife, assignable by her after the death of her husband. It appears by a foot-

note that upon a second action to recover an install-
ment upon the interest, the plaintiff obtained a verdict
and judgment, and upon a review by the court of ap-
peals, the same right of the wife was sustained, and
the judgment was affirmed.

Another instructive case is that of *Blanchard. v.
Sheldon,* 43 Vt. 512. There the contract was to pay to
Aurilla Ballou if called for before her decease, if not,
to Daniel Blanchard. Mrs. Ballou retained the instru-
ment until her death. The executor with knowledge of
the facts kept the possession of the paper from Blan-
chard and collected the amount. In an action against
the executor for conversion, he was held liable. The
court placed the right of recovery upon the doctrine of
a gift *inter vivos* by the delivery of the money to Shel-
don, one of the obligors upon the paper, for Blanchard.

Whether the transaction here should be called a gift
*inter vivos,* conceding that the fund loaned belonged
to Mr. Mallows, he could dispose of it by making the
note payable to himself, or to his wife, or to a stranger
had he desired, and in either case it would have been
no concern to an administrator of his estate. (*Craw-
ford's Adm'r v. Lehr,* 20 Kan. 509; *Robinson's Execu-
tors v. Blood's Heirs,* 64 Kan. 290, 294, 67 Pac. 842.)
In any event, the note when sued upon appeared upon
its face to belong to Mrs. Mallows, her husband being
dead, and in the absence of evidence to the contrary
she was entitled to recover. The instruction to so find,
which she requested, should have been given. As there
was no conflict in the evidence and no good reason ap-
pears for another trial, the judgment is reversed, with
directions to render judgment for Mrs. Mallows for
the recovery of the money due upon the instrument.